IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DEBRA L. KRUSE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 09-CV-395-TLW |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Plaintiff Debra Kruse seeks judicial review of the decision of the Commissioner of the Social Security Administration denying her claim for supplemental security income ("SSI") under Title XVI of the Social Security Act ("SSA"), 42 U.S.C. § 1382c(a)(3). In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. [Dkt. # 9].

**Introduction**

A claimant for disability benefits bears the burden of proving a disability. 42 U.S.C.§ 423 (d)(5); 20 C.F.R. § 416.912(a). "Disabled" is defined under the Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To meet this burden, plaintiff must provide medical evidence of an impairment and the severity of the impairment during the time of her alleged disability. 20 C.F.R. § 416.912(b). A disability is a physical or mental impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §

423 (d)(3). "A physical impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [an individual's] statement of symptoms." 20 C.F.R. § 416.908. The evidence must come from "acceptable medical sources" such as licensed and certified psychologists and licensed physicians. 20 C.F.R. § 416.913(a).

### Background

Plaintiff was born on January 7, 1955, and was 53 years old on the date of the hearing before the ALJ. [R. 31, 107]. She completed the eighth grade, was married and divorced, and moved to Tulsa in 1995, to be close to her two adult children. [R. 34, 35, 47, 126]. She lives alone in subsidized housing, and receives food stamps. [R. 32, 108]. Plaintiff is 5' 8 ½" tall and weighs 190 pounds. [R. 31]. Plaintiff's work history and earnings are minimal. [R. 112, 128]. From November 1991 to February 1992, she stocked shelves at a Target Store. From February 1996 to April 1997, she was a cashier at a Citgo Gas Station. [R. 128]. In 2001, she earned $338.58 working two weeks as a cashier for Murphy's Gas Station. Her last employment was in 2004, cleaning offices for two weeks, earning $681.58. Plaintiff regularly "babysits" her four grandchildren, two of them are 7 years old, the others are ages 5 and 6. [R. 51, 52]. Plaintiff cares for her daughter's two children at her apartment every Saturday evening through Sunday; and her son's two children at his home while he works on Wednesdays and Fridays from 3:00 p.m. until after 9:00 p.m. [R. 52-53]. Plaintiff is a habitual smoker and has been repeatedly advised by various physicians to stop smoking and participate in a smoking cessation program. Plaintiff continues to smoke cigarettes and has been treated at urgent care facilities for chronic bronchitis and coughing up blood. [R. 38, 12, 251, 312, 314, 319, 330, 353, 354, 379, 546, 529, 539, 493,485,493,529].

On or about February 16, 2006, plaintiff's live-in common law husband left her. [R. 235,

237]. Since February 21, 2006, plaintiff sought treatment at St. Francis Hospital in Broken Arrow (February 21, 2006 to March 28, 2006) [R. 221-237]; Hillcrest Medical Center (September 18, 2006 to September 19, 2006) [R. 249-278]; St. John's Medical Center and Dr. Tanveer Ahmed, M.D. (May 13, 2006 to October 23, 2006) [R. 310-397]; and OSU Family Physicians (June 12, 2007 to July 13, 2007 and January 16, 2008 to November 18, 2008) [R. 425-509].[1] Soon after her husband left her, plaintiff was seen in the emergency room at St. Francis Hospital in Broken Arrow, complaining of anxiety, and chronic pain in her left foot, right ankle, and hip. [R. 235]. Plaintiff filed her application for disability benefits on May 12, 2006. [R. 107]. On May 13, 2006, plaintiff was in the emergency room at St. Johns Medical Center, complaining that she could not walk and could not "perform normal ADL's." However, the examination notes state that plaintiff was seen by the staff walking from the bathroom to a wheel chair. [R. 350].

Plaintiff alleges her impairments are panic disorder, depression, joint disease, and foot edema. [R. 121]. In assessing plaintiff's qualification for disability benefits, the ALJ found that (1) plaintiff has not engaged in substantial gainful activity since May 12, 2006; (2) her severe impairments are restrictive lung disease, panic disorder, depression, degenerative disk disease at L3-L4, osteoarthritis and rheumatoid arthritis; (3) her foot edema is non-severe; (4) she does not have an impairment or combination of impairments that meet or equal one of the listed impairments; (5)

---

[1] Prior to February 21, 2006, plaintiff received routine medical care at the Omni Medical Group from May 12, 2004 to March 1, 2006 for pap smears, mammograms, and medication for hypertension. [R. 204-220]. In May 2004, plaintiff complained of pain in her left leg from her hip to her knee. [R. 209]. On November 7, 2005, at Southcrest Hospital, plaintiff underwent diagnostic testing on her right hip (indicating chronic osteoarthritis and very mild degenerative disk disease); on her lumbar spin (indicating mild degenerative disk disease at the L3-L4, and atherosclerosis); on her pelvis (indicating no significant degenerative changes); on her right foot (indicating mild degenerative joint disease); and on her left calf (indicating a popliteal cyst). [R. 188-201].

she is unable to perform her past work as a cashier due to her panic disorder; (6) but she retains the residual functional capacity ("RFC') to perform light exertion work, (7) limited to lifting and/or carrying 20 pounds occasionally, or 10 pounds frequently, standing and/or walking at least 6 hours out of an 8-hour workday, sitting for at least 2 hours in an 8-hour workday, pushing and pulling consistent with lifting and carrying restrictions, no forceful gripping with hands, power torquing or twisting, simple work not requiring safety operations and hypervigilence, and limited contact with the public. [R. 14-15]. The ALJ concluded plaintiff was not disabled within the meaning of the SSA and found that she could perform work, such as a bench assembler, poultry processor, electronic assembler; and that these positions existed in significant numbers in the regional and national economy. [R. 23]. This finding was the fifth in the five step inquiry outlined in Williams v. Bowen, 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing the five steps in detail).[2]

## Issue

Plaintiff raises two issues on appeal:

(1)     Whether the ALJ properly considered the medical source information; and

(2)     Whether the ALJ performed a proper credibility determination.

[Dkt. # 15 at 1].

## Discussion

The role of the Court in reviewing the decision of the Commissioner under 42 U.S.C. § 405(g)

---

[2] The five-step sequence provides that the claimant (1) is not gainfully employed, (2) has a severe impairment, (3) has an impairment which meets or equals an impairment presumed by the Secretary to preclude substantial gainful activity, listed in Appendix 1 to the Social Security Regulations, (4) has an impairment which prevents her from engaging in her past employment, and (5) has an impairment which prevents her from engaging in any other work, considering her age, education, and work experience. Ringer v. Sullivan, 962 F.2d 17 (10th Cir. 1992) (unpublished) citing Williams v. Bowen, 844 F.2d at 750-52.

4

is limited to a determination of whether the record as a whole contains substantial evidence to support the decision and whether the correct legal standards were applied. See Briggs ex. rel. Briggs v. Massanari, 248 F.3d 1235, 1237 (10th Cir. 2001); Winfrey v. Chater, 92 F.3d 1017, 1019 (10th Cir. 1996); and Castellano v. Secretary of Health & Human Serv., 26 F.3d 1027, 1028 (10th Cir. 1994). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). "Evidence is insubstantial if it is overwhelmingly contradicted by other evidence." O'Dell v. Shalala, 44 F.3d 855, 858 (10th Cir. 1994). The Court is to consider whether the ALJ followed the "specific rules of law that must be followed in weighing particular types of evidence in disability cases," but the Court will not reweigh the evidence or substitute its judgment for that of the ALJ. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007).

Plaintiff identifies Sarah Hall, D.O. with OSU Family Physicians as her treating physician and relies on Dr. Hall's letter dated October 30, 2007, as plaintiff's "medical source information" which she contends was not properly evaluated by the ALJ. Dr. Hall's letter reads in toto as follows:

> To Whom It May Concern:
>
> Ms. Debra Kruse has been an established patient with our clinic system for several months. She has been diagnosed with Rheumatoid Arthritis. This is a crippling joint disease that affects the small joints of her hands primarily. She has experienced daily pain and has not been able to perform even the simplest activities of daily living due to her condition. This condition is permanent and will only be controlled with a regimen of medications. She will have difficulty maintaining a job secondary to her chronic pain and inability to use her hands effectively.

[R. 437]. The proper legal procedure for evaluating the opinion of a treating physician is well established. "Under the regulations, the agency rulings, and our case law, an ALJ must give good reason in the notice of determination or decision for the weight assigned to a treating physician's

5

opinion." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003) (citing 20 C.F.R. § 404.1527 (d)(2) and Social Security Ruling 96-2p, 1996 WL 374188 at 5). "The type of opinion typically accorded controlling weight concerns the 'nature and severity of the claimant's impairments including the claimant's symptoms, diagnosis and prognosis, and any physical or mental restrictions.'" Lopez v. Barnhart, 183 Fed. Appx. 825, 827 (10th Cir. 2006) (unpublished).[3] Generally, an ALJ should give more weight to opinions from treating physicians. Watkins, 350 F.3D at 1300 (citing 20 C.F.R. § 404.1527(d)(2)). However, it is error to give the opinion controlling weight simply because it is provided by a treating source. Id.

In determining whether the opinion should be given controlling authority, the analysis is sequential. First, the ALJ must determine whether the opinion qualifies for "controlling weight," by determining whether it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and whether it is consistent with the other substantial evidence in the administrative record. Id. If the answer is "no" then this portion of the inquiry is complete. If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record. Id. "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

Second, if the ALJ finds the treating physician's opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the record, it is entitled to deference and must be evaluated in reference to the factors enumerated in 20 C.F.R. § 404.1527 and 416.927. Those factors are:

---

[3] Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. 32.1: 10th Cir. R. 32.1.

> (1) the length of the treating relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed, (3) the degree to which the physician's opinion is supported by relevant evidence, (4) consistency between the opinion and the record as a whole, (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

Id. at 1301 (citing Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001)). The ALJ must give good reasons in his decision for the weight he ultimately assigns the opinion. Id. (citing 20 C.F.R. § 404.1527(d)(2)).

Third, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so. Id. (citing Miller v. Chater, 99 F.3d 972, 976 (10th Cir. 1990)). The reasons must be of sufficient specificity to make clear to any subsequent reviewers the weight the adjudicator gave to the treating physician's opinion and the reasons for that weight. Anderson v. Astrue, 319 Fed. Appx. 712, 717 (10th Cir. 2009) (unpublished).

> The ALJ cited the opinion of Dr. Hall.
>
> An October 30, 2007 letter from Sarah Hall, D.O. indicated the claimant has rheumatoid arthritis and has been experiencing daily pain. Dr. Hall opined that the claimant would have difficulty maintaining a job secondary to her chronic pain and inability to use her hands effectively (Exhibit 22F).

[R. 18]. The ALJ did not give Dr. Hall's opinion controlling weight. He explained: "[i]n this instance the treating source's opinion is not supported by the whole record due to the claimant's improved status." [R. 21]. Plaintiff does not challenge this conclusion, but contends instead that the ALJ erred in not analyzing the relevant factors to determine whether Dr. Hall's opinion is entitled to deference and explain why he chose the non-treating physicians opinions over her's. [Dkt. #15 at 2-3]. The Court disagrees. The ALJ addressed the factors which could be ascertained from the

record.  Addressing factor 3, the ALJ found Dr. Hall's opinion was not "supported by relevant evidence."  He stated:

> As for the opinion evidence, the claimant's physician, Dr. Hall opined on October 30, 2008 [sic] that the claimant would have difficulty maintaining a job secondary to her chronic pain and inability to use her hands effectively (Exhibit 22F).  However, records from the same source indicated that by the end of November 2008 [sic] the claimant showed improvement in her rheumatoid arthritis symptoms due to a new prescription.

[R. 21].  Addressing factor 4, the ALJ found that there was a lack of "consistency between [Dr. Hall's] opinion and the record as a whole."  He stated:

> The only X-ray of the hands on record (July 2007) indicates mild arthritic changes.  Further, the claimant's limitations as to grip are taken into consideration by the residual functional capacity which specifies no forceful gripping.

[R. 21].  The ALJ relied on medical records from Dr. Hall's clinic, OSU Family Physicians, to illustrate that objective medical evidence was inconsistent with her opinion.  The ALJ first identified plaintiff's medical complaints:

> A June 12, 2007 examination record by OSU Physicians indicated the claimant had diffuse joint and muscle pain, bilateral feet paratheses and pain, chronic lumbar back pain with radiculopathy, hypertension, general anxiety, depression, increased lipids and possible lung cancer.

[R. 18].  He then demonstrates that those concerns are not supported by relevant objective medical evidence.

> A July 13, 2007 X-ray report indicated minimal arthritic changes in both hands.  A July 13, 2007 lumbar spine X-ray indicated the claimant has . . . mild to moderate spondylosis deformans, mild disk space narrowing at L3-L4 level and atherosclerosis.

[R. 18].  The ALJ found that Dr. Hall's opinion was inconsistent with her own examination notes which showed that plaintiff's arthritic condition has improved with medication.  He found:

> A November 27, 2007 progress note by OSU Physicians indicates the claimant's

rheumatoid arthritis has improved on Enbrel.

[R. 18]. Addressing factor 6, the ALJ looked to plaintiff's medical history to identify "other factors" which contradicted Dr. Hall's opinion. The ALJ cited objective medical evidence to show that plaintiff's joint and degenerative disk disease were only "mild" disorders:

> A November 5, 2005 Emergency Department record from Southcrest Hospital indicates claimant complained of pain to the right hip, knee and foot which interfered with ability to walk. A CT Scan of the pelvis indicated mild degenerative joint disease of the hip. CT Scan of the pelvis indicated mild degenerative disk disease with mild disk space narrowing at L3-4, spurs noted off vertebral body end-plates, and atherosclerosis (Exhibit 1F).

[R. 16]. The ALJ referred to objective medical evidence in 2006, to show that the pain associated with plaintiff's right knee was not a blood clot, but a cyst behind the knee cap.

> A March 14, 2006, Emergency Room report from St. Francis Hospital at Broken Arrow indicates the claimant had pain behind her right knee. The diagnosis was acute right leg phlebitis. A March 15, 2006 Venous Doppler Study showed no thrombosis was present, but a Baker's cyst was noted behind the right knee.

[R. 16]. The ALJ found that Dr. Hall's opinion was inconsistent with the opinions of all the medical consultants who examined plaintiff. The ALJ referenced a September 5, 2006 consultative Examination Report by Tre' Landrum D.O. The ALJ found:

> Upon examination, Dr. Landrum found no neurological deficit, fine manipulation of objects was normal, straight leg raising test was negative, heel and toe walking were performed with difficulty bilaterally, and ambulation was performed with a stable gait at slow speed. Ranges of motion were within normal limits.

[R. 17]. The ALJ found credible the physical RFC assessment of Dr. Shafeek Sanbar, M.D. which was inconsistent with Dr. Hall's opinion:

> On September 12, 2006 a state Disability Determination Service medical consultant reviewed the medical evidence and found the claimant could occasionally lift and carry 20 pounds, frequently lift and carry 10 pounds, and stand or walk (with normal breaks) for about 6 hours in an 8-hour workday. No other limitations were indicated.

> The medical consultant noted the record showed that the claimant moved around the room easily and had full range of motion. Straight leg raising test was negative. She was able to ambulate at a steady gait and slow speed. (Exhibit 10F).

[R. 17]. The ALJ relied on Listing of Impairments 1.02 (pertaining to major dysfunction of joints); 1.04 (pertaining to disorders of the spine); and 14.09 (pertaining to inflammatory arthritis) in 20 C.F.R. pt. 404, subpt B, App. 1, to determine that plaintiff's joint and degenerative disc disease did not meet or medically equal the requirements under the regulations for per se disabilities. [R. 12-13]. He also noted that plaintiff's allegation that she could walk only one-half block was contradicted by other testimony concerning her overall activity level and the objective medical evidence. Specifically, the ALJ cited plaintiff's own testimony, which was inconsistent with the limitations imposed in Dr. Hall's opinion. The ALJ stated:

> The claimant testified that she spends her days taking care of her grandchildren, trying to clean house, cooking, watching TV, reading, talking on the phone or visiting a friend. She takes care of her grandchildren (ages 5, 6, and 7) on Wednesday and Friday from 3 to 9 p.m. and all day Sunday. She cooks easier items for the grandchildren such as TV dinners or pot pies. She stated that she made cupcakes for them the day prior to the hearing. She does not drive. She has a friend in Bartlesville who sometimes comes to get her and they go out t eat or to a movie.

[R. 15-16]. The ALJ amply supported his decision by medical evidence of record, unlike Dr. Hall's opinion which is at odds with her own clinical notes and other opinion evidence. Thus, the undersigned finds that the ALJ followed the correct legal analysis in discrediting Dr. Hall's opinion and that the ALJ's decision is supported by substantial evidence in the record. The remainder of plaintiff's arguments address the weight of the evidence rather than the sufficiency, an analysis this Court is not allowed to consider.

As her second issue of error, plaintiff contends the ALJ failed to perform a proper credibility determination. Plaintiff claims the ALJ erred by: (1) failing to state what portion of plaintiff's

testimony he considered credible and what portion he did not; (2) relying on her daily living activities as indication of her ability to work; (3) relying on objective medical evidence to demonstrate the severity of her symptoms; (4) showing bias against plaintiff for being unable to stop smoking cigarettes; and (5) finding a lack of medical source evidence that plaintiff has limitations greater than those determined in his decision. [Dkt. # 6-8]. The court finds no merit in these allegations. The ALJ summarized the relevant portion of plaintiff's testimony:

> The claimant alleged she is disabled by back, leg and foot pain, degenerative joint disease, osteoarthritis and rheumatoid arthritis. The claimant testified her whole body is in pain due to rheumatoid arthritis. She demonstrated in the hearing that she cannot make a completely closed fist. She stated she has difficulty handling objects, such as coins, and they fall out of her hands. She stated she cannot open jars and bottles and seeks assistance from others to open them. She stated that her mobility was much more limited, but that her rheumatoid arthritis symptoms have improved in the last four months due to taking Enbrel. She testified that she still has to sit in a chair for two hours in the morning before functioning due to stiffness. She stated she still cannot take a bath, get on her knees, or get on the floor. She alleged she can stand five minutes and sit about 45 minutes. She alleged she has foot and leg pain if she bears weight on her feet for any length of time. She alleged she can walk only one-block. She stated she uses a handrail to climb stairs, a bench in the shower, and a scooter in the grocery store.

[R. 16]. In assessing plaintiff's credibility, the ALJ considered the evidence of record and found that plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, her statements concerning the intensity, persistence, and limiting effects of the symptoms were not credible to the extent they were inconsistent with the RFC assessment. [R. 19]. The ALJ set forth plaintiff's own testimony which impeached the severity of her purported physical limitations:

> [T]he claimant described a fairly active schedule. She is the caretaker of four young children three days a week. She described activities including cleaning house and cooking. She is able to go to stores, restaurants and movies. She is able to visit family and friends.

11

[R.19]. Plaintiff contends the ALJ erred in relying on her daily activities in assessing her credibility. There is no merit to this contention. Under the regulations an ALJ may properly consider a claimant's daily activities in assessing whether plaintiff is disabled and whether her statement of symptoms, including pain, is credible. See 20 C.F.R. § 416.929 and SSR 96-7p.

The ALJ found that plaintiff's testimony of disabling pain was inconsistent with the objective medical evidence of record and therefore not entirely credible. The ALJ found;

> The objective evidence indicated 'mild' impairments, as follows: CT Scan indicated mild degenerative joint disease of the hip (November 2005, Exhibit 1F); CT Scan of the lumbar spine indicated degenerative disk disease with mild disk space narrowing at L3-4 (November 2005, Exhibit 1F); X-ray report indicated minimal arthritic changes in both hands (July 2007, Exhibit 21F); and X-ray report indicated mild to moderate spondylosis deformans and mild disk space narrowing at L3-L4 level (July 2007, Exhibit 21F).

[R. 20]. Plaintiff contends the ALJ erred in relying on objective medical evidence to impeach her allegations of disabling pain. Plaintiff relies on a passage in a rheumatology textbook (attached as an exhibit to her brief) in arguing that "x-ray changes are not equal to the severity of the pain and other limitations early on in the course of a disease." [Dkt. # 15 at 7]. Plaintiff's purported "evidence" is external to the record and is not a proper basis to attack the objective medical evidence of record. "Court review of the Secretary's denial of Social Security disability benefits is limited to a consideration of the pleadings and the transcript filed by the Secretary as required by 42 U.S.C. § 405(g). It is not a trial *de novo*. The court is not at liberty to consider evidence not in the record certified by the Secretary." Atteberry v. Finch, 424 F.2d 36, 39 (10th Cir. 1970).

The ALJ relied on the opinions of the agency consultants to refute plaintiff's claim of disabling pain. The ALJ found:

> The severity of the claimant's limitations is refuted by a consultative physician's

> opinion. Dr. Landrum found no neurological deficit. The claimant's fine manipulation of objects with her hands was normal. Ambulation was performed with a stable gait at slow speed. All ranges of motion were within normal limits (September 2006, Exhibit 7F). The claimant's physicians documented that her rheumatoid arthritis has improved on Enbrel (November 18, 2008, OSU Physicians, Exhibit 26F).

[R. 20]. Plaintiff faults the ALJ for finding that the "record does not contain any opinions from treating or non-treating physicians indicating that the claimant is disabled or has limitations greater than those determined in this decision." [Dkt. # 15 at 8, citing R. 21]. Plaintiff misrepresents the ALJ's finding in this regard. This finding was made in the context of the ALJ's rejection of Dr. Hall's opinion as both inconsistent with the record, and moreover, inconsistent with her own clinical notes.

The ALJ discounted the disabling effect of plaintiff's restrictive lung disease, noting that she is "non-compliant with her physicians' recommendations that she quit smoking." [R. 20]. He further noted that recent tests showed that "no malignancies were found, therefore this condition is not disabling." [R. 20]. Plaintiff contends these statements are indicative of bias against plaintiff for being unable to stop smoking cigarettes. There is no merit to this contention. The Tenth Circuit has held that a claimant's failure to follow a doctor's instructions is a factor in determining credibility. Sims v. Apfel, 172 F.3d 879 (10th Cir. 1999) (unpublished).

Plaintiff fails to cite conclusive medical evidence which contradicts the ALJ's assessment of plaintiff's credibility. Some of plaintiff's argument addresses the weight rather than the sufficiency of the evidence and other arguments have no relevance to the ALJ's credibility assessment.

The Court finds that the ALJ performed a proper credibility determination and that his

determination is supported by substantial evidence. The ALJ properly linked his credibility determination to the evidence of record. He thoroughly explained his credibility determination, citing inconsistencies between plaintiff's testimony and the medical evidence. In Kepler v. Chater, 68 F.3d 387 (10th Cir. 1995), the court held the ALJ's credibility determination was inadequate because the ALJ simply recited the general factors he considered and then said the plaintiff was not credible based on those factors. The court explained that the ALJ must refer to the specific evidence he is relying on in determining credibility and link the credibility findings to specific evidence. Id. at 391. In the instant case, the ALJ complied with this standard. In Qualls v. Apfel, 206 F.3d 1368 (10th Cir. 2000), the court stated that "our opinion in Kepler does not require a formalistic factor-by-factor recitation of the evidence. So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the dictates of Kepler are satisfied." Id. at 1372. "Credibility determinations are peculiarly the province of the finder of fact." Hackett v. Barnhart, 395 F.3d 1168, 1171 (10th Cir. 2005). Accordingly, the Court finds that the ALJ's decision is supported by substantial evidence in the record and the correct legal standards were applied.

## Conclusion

Based on the foregoing, the Court AFFIRMS the decision of the Commissioner denying disability benefits to plaintiff.

SO ORDERED this 26th day of October, 2010.

T. Lane Wilson
United States Magistrate Judge